FILED
CLERK
5/15/2015 2:01 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ELIZABETH LAHR,

          Plaintiff,

-against-

**OPINION AND ORDER
13-CV-0785 (SJF)**

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

          Defendant.
----------------------------------------------------------X
FEUERSTEIN, District Judge:

Plaintiff seeks review of the unfavorable Notice of Decision ("decision") of the Commissioner of Social Security ("Commissioner") denying her request for social security disability benefits. The Commissioner and plaintiff have filed cross-motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("FRCP") 12(c). For the following reasons, the Commissioner's motion is **GRANTED** and plaintiff's motion is **DENIED**.

**I.    Background**

    **A.    Procedural History**

On September 21, 2009, plaintiff filed an application with the Social Security Administration ("SSA") for disability insurance benefits, alleging that she became disabled as of January 14, 2009 due to herniated discs in her neck and back and a heart condition. Tr. 44-46; 104-05.[1] Plaintiff's application was denied on April 2, 2010 (Tr. 11) and on July 14, 2011, plaintiff filed a written request for a hearing, which was held on March 8, 2012 before Administrative Law Judge ("ALJ") Seymour Rayner. *Id.*; Tr. 417-54. By decision dated March 29, 2012, the ALJ determined that plaintiff was not under a disability within the meaning of the

---

[1]  "Tr." refers to the transcript from the administrative record.

Social Security Act and denied plaintiff's application. Tr. 8-19. Plaintiff sought review from the Appeals Council (Tr. 7), which denied the request, making the ALJ's decision final. Tr. 3.

B. **Non-Medical Evidence**

Plaintiff, an unmarried female born in 1979, resides with her father and two (2) children, communicates in English and has a general equivalency diploma. Tr. 104, 420. Plaintiff met the insured status requirements of the Social Security Act through March 30, 2014. Tr. 13. From 2005 until her date of disability in 2009, plaintiff was employed as a school bus attendant until she injured her neck while at work and thereafter stopped working. Tr. 65-67, 69, 422-25. She currently receives Worker's Compensation payments due to a work-related head injury. Tr. 47-50.

On October 6, 2009, plaintiff completed a Social Security Disability Report, alleging that she was in constant pain and unable to sit, stand or walk due to herniated discs in her back and neck and her heart condition. Tr. 104. On October 25, 2009, plaintiff completed a function report, alleging that she lived with her family in an apartment, cared for her children, and that her father assisted with various duties, chores and responsibilities because of her condition. Tr. 89, 98. Plaintiff also claimed that her conditions affected her ability to sleep and groom herself. Tr. 90. Additionally, plaintiff reported that she: was unable to cook daily meals and relied on her father and son to prepare food or ate out; could perform only light housework and no outdoor or yard work; rarely went outdoors and did not go out alone due to her health issues; shopped online; and engaged in social activities on a limited basis. Tr. 91-93. Plaintiff also reported that she was somewhat able to handle her finances and her medical condition had not limited her ability to do so. Tr. 92. As to hobbies and interests, plaintiff reported that she tries to play with

her children, but is limited by her medical issues. *Id.* Similarly, plaintiff rarely spends time with others, does not attend church or sporting events, sometimes has trouble getting along with others and is much less social due to her medical condition. Tr. 93.

With respect to her abilities, plaintiff reported that she experiences: "feelings of passing out on a random basis several times a day with every slight exertion"; difficulty walking more than a few feet before becoming dizzy and breathless; and cannot climb stairs at all. *Id.* In addition, plaintiff has difficulties with concentration and memory and cannot finish things she starts without pushing herself. Tr. 94-95.

Plaintiff described her pain as stabbing, shooting and like a "lightening bolt" with tingling and numbness in her head, neck, arms, hands, feet, legs and back; she also experiences pain in her head, chest and heart. Tr. 96. Plaintiff alleges that she was in constant pain while standing, walking or sitting and, although pain killers and muscles relaxers have been prescribed, she is selective in what she uses due to her heart condition. Tr. 97. To relieve her pain, plaintiff massages and stretches her muscles. Tr. 98.

## II. Discussion

### A. Standard for Determining Disability

Pursuant to 42 U.S.C. § 423(d)(1)(A), the term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Disability benefits are only available where an individual has a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable

clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). For the purposes of this section:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . .

42 U.S.C. § 423(d)(2)(A).

### B. Standard of Review

Federal Rule of Civil Procedure ("FRCP") 12(c) provides that "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." In deciding a motion brought pursuant to FRCP 12(c), the Court applies "the same standard as that applicable to a motion under rule 12(b)(6)." *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994) (citing *Ad-Hoc Comm. of Baruch Black and Hispanic Alumni Ass'n v. Bernard M. Baruch College*, 835 F.2d 980, 982 (2d Cir. 1987)). Thus, a "party is entitled to judgment on the pleadings only if it is clear that no material issues of fact remain to be resolved and that it is entitled to judgment as a matter of law." *Straw v. Apfel*, No. 98 Civ. 5089, 2001 WL 406184, at *2 (S.D.N.Y. Apr. 20, 2001).

When considering a motion to dismiss a complaint, or one for judgment on the pleadings, the court must assume as true all allegations contained in the complaint. *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998). Furthermore, a court must construe the pleadings and any reasonable inferences in the light most favorable to the non movant. *Falls Riverway Realty, Inc.*

*v. City of Niagara Falls*, 754 F.2d 49, 54 (2d Cir. 1985). "In resolving motions made pursuant to [FRCP] 12(c), a court is generally limited to considering the factual allegations set forth in the pleadings" because the use of materials outside the scope of the pleadings converts the motion into one for summary judgment. *Abiona v. Thompson*, 237 F. Supp. 2d 258, 265 (E.D.N.Y. 2002). Where the parties refer to the administrative record, regulations and ALJ decisions, however, those materials are deemed incorporated into the pleadings and are properly considered by a court deciding a motion brought pursuant to FRCP 12(c). *See Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991).

In deciding a motion for judgment on the pleadings, the reviewing court "must first be satisfied that the 'claimant has had a 'full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act.' " *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990) (quoting *Echevarria v. Sec'y of Health & Human Serv.*, 685 F.2d 751, 755 (2d Cir. 1982)). "It is the Commissioner's affirmative responsibility to develop the record in such a way as to ensure a full and fair hearing." *Crespo v. Barnhart*, 293 F. Supp. 2d 321, 324 (S.D.N.Y. 2003). *See, e.g.*, *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999).

After the Court is satisfied that the record is fully developed, it "reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada*, 167 F.3d at 773. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) (holding that applying substantive law to uphold a denial of benefits before ensuring that the ALJ applied the correct legal principles creates "an unacceptable risk that a claimant will be deprived of the right to have her disability determination made" pursuant to the proper legal standards).

"Next, the Court examines the record to determine if the Commissioner's conclusions are

supported by substantial evidence." *Tejada*, 167 F.3d at 773. A decision denying benefits must be affirmed if it is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Meney v. Astrue*, 793 F. Supp. 2d 621, 623 (2011) ("The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards."); *Stiggins v. Barnhart*, 277 F. Supp. 2d 239, 243 (W.D.N.Y. 2003). Thus, a court's "function is limited to assessing whether the Commissioner applied the proper legal standards in making his determination and whether that determination is supported by the substantial evidence on the record as a whole." *Cruz v. Barnhart,* 343 F. Supp. 2d 218, 221 (S.D.N.Y. 2004) (quoting *Stancel v. Apfel*, No. 99 Civ. 9339, 2000 WL 1839758, at *3 (S.D.N.Y Dec. 13, 2000)). "[I]t is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). *See Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (holding that a " 'court may not substitute its own judgment for that of the Secretary, even if it might justifiably have reached a different result upon de novo review' ") (quoting *Valente v. Sec'y of Health & Human Servs*., 733 F.2d 1037, 1041 (2d Cir. 1984)).

"Substantial evidence requires 'less than a preponderance, but more than a scintilla of evidence [and] means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *T-Mobile Northeast LLC v. Town of Islip*, 893 F. Supp. 2d 338, 354 (E.D.N.Y. 2012) (quoting *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 494 (2d Cir. 1999)).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," remand to the Secretary for further development of the evidence is required.

*Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980) (citing cases).

> ### C. Whether the ALJ Applied the Correct Legal Standards
>
> #### 1. Legal Standards for Disability Evaluations

Social Security Administration regulations establish a five-step process that the Commissioner is required to follow in evaluating a claim for disability benefits. *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002); *Stiggins*, 277 F. Supp. 2d at 242; 20 C.F.R. § 404.1520. "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." *Draegert*, 311 F.3d at 472; *see* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

In performing the disability evaluation, the ALJ must consider certain facts, including: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (citing cases). The analysis is sequential: if the claimant is found disabled, or not, at a particular step, the Secretary makes its decision or determination and does not proceed to the next step. *Meney*, 793 F. Supp. 2d at 623; *see* 20 C.F.R. § 404.1520(a)(4).

"The claimant bears the burden of proof as to the first four steps, while the Secretary bears the burden of proof as to the last step." *Murphy v. Sec'y of Health and Human Servs.*, 872 F. Supp. 1153, 1157 (E.D.N.Y. 1994) (citing *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.

1982)).

### 2. ALJ Rayner's Decision

With respect to step one (1) of the sequential analysis, the ALJ found that although plaintiff worked after her alleged onset date, her wages were below substantial gainful activity ("SGA") levels and thus, she had not engaged in SGA since January 14, 2009. Tr. 13.

As to step two (2), the ALJ found that plaintiff had cervical degenerative disc disease, a severe impairment. *Id.* According to his decision, the "impairment causes more than minimal limitations in the [plaintiff's] ability to perform basic work activities." *Id.* With regard to plaintiff's medically determinable mental impairments of anxiety and depressive disorders, the ALJ found that they did not cause more than minimal limitation in her ability to perform basic mental work activities and consequently, were non-severe. *Id.*

As to step three (3), the ALJ found that plaintiff did not have an impairment or combination of impairments that met or was medically equivalent to the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 14. The ALJ considered impairments under section 1.00 (musculoskeletal), however, the requisite criteria for the relevant listings were absent from the medical records and no treating or examining doctor had indicated findings that would have satisfied any of the listed impairments. *Id.*

With regard to step four (4), the ALJ determined that plaintiff had the residual functional capacity ("RFC") to sit and stand/walk six (6) hours each in an eight (8) hour workday and to

lift/carry up to twenty (20) pounds as defined by 20 C.F.R. § 404.1567(b).[2] *Id.* Consequently, the ALJ found that plaintiff was not disabled and was capable of performing her past work as a bus attendant because it did not require her to perform work related activities precluded by her RFC. Tr. 17. Based upon the foregoing, the ALJ applied the relevant sequential analysis in determining plaintiff's claim for disability benefits.

> **D.     Whether Substantial Evidence Supports the ALJ's Decision**
>
> **1.     Whether the ALJ Failed to Comply With Social Security Ruling 96-9p**

Plaintiff contends that the ALJ failed to give weight to the opinion of consultative examiner, Dr. Carol Grant, as required by 20 C.F.R. § 404.1527(e)(2).[3] Dr. Grant's evaluation indicates that plaintiff reported experiencing neck pain radiating down to both hands; numbness and weakness in both hands, particularly on the right side; low back pain aggravated by bending, lifting, prolonged sitting or standing; and heart palpitations accompanied by chest pain, dizziness and shortness of breath. Tr. 272. Dr. Grant concluded that plaintiff's "subjective complaints are consistent with the objective medical findings." Tr. 275. The ALJ considered Dr. Grant's

---

[2] Pursuant to 20 C.F.R. § 404.1567(b), light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."

[3] This section was formerly 20 C.F.R. § 404.1527(f). Plaintiff also cites to 20 C.F.R. § 416.927(e) (formally § 416.927(f)), which applies to claims for Supplemental Security Income; plaintiff's application is for disability insurance benefits.

findings together with those of a state disability medical consultant[4] ("state consultant"), who determined that plaintiff could sit and stand/walk six (6) hours each in an eight (8) hour workday and lift/carry twenty (20) pounds. Tr. 16.

Title 20 C.F.R. § 404.1527(e) applies to the opinions of non-examining sources, including "State agency medical and psychological consultants, other program physicians and psychologists, and medical experts." Pursuant to § 404.1527(e)(2)(i), state agency consultants "are highly qualified . . . experts in Social Security disability evaluation." *See Younes v. Colvin*, No. 14 Civ. 170, 2015 WL 1524417, at *5 (N.D.N.Y. Apr. 2, 2015) ("State agency medical consultants are recognized experts in evaluation of medical issues in disability claims under the Act" and "[a]ccordingly, their opinions can constitute substantial evidence."). Pursuant to § 404.1527(e)(2)(ii), the ALJ "must explain in the decision the weight given to the opinions of a State agency medical . . . consultant" as the ALJ must do "for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work" for the SSA.

Plaintiff argues that the ALJ ignored Dr. Grant's opinion, but should have accorded it the same weight given to the state consultant's insofar as both examiners found that plaintiff's subjective complaints were consistent with the objective medical findings.

Contrary to plaintiff's argument, the ALJ considered both opinions pursuant to § 404.1527(e) and determined that the state consultant "adequately considered the [plaintiff's] subjective complaints," and found them to be consistent with "the consultative examination and record as a whole," and therefore, "accord[ed] considerable weight to the consultant's opinion."

---

[4] The decision refers to the state consultant as a "state disability medical consultant," without identifying his actual name.

Tr. 16; 298-305; 306-313. Thus, the ALJ determined that the state consultant's opinion was due considerable weight because it was supported by the record on the whole and Dr. Grant's opinion was due no weight, apparently based upon his finding that plaintiff's subjective complaints were not supported by the objective medical evidence. Accordingly, the ALJ properly explained his reasons for according particular weight to one opinion over another and plaintiff's request for judgment on this issue is therefore denied.

### 2. Whether the ALJ Erroneously Relied upon Dr. Kelly's Opinion

On March 31, 2010, Robert H. Kelly, D.O. ("Dr. Kelly"), a state disability medical consultant, completed a physical residual functional capacity assessment of plaintiff, which indicated that plaintiff could occasionally lift and/or carry twenty (20) pounds; frequently lift and/or carry ten (10) pounds; stand and/or walk and sit for a total of about six (6) hours in an eight (8) hour workday; and push and/or pull without limitation. Tr. 299.

Plaintiff argues that the ALJ improperly relied upon Dr. Kelly's opinion because he never examined her. Furthermore, additional medical records were submitted after the March 2010 assessment and thus, the ALJ relied upon an incomplete record in reaching his decision.

Pursuant to 20 C.F.R. § 404.1527(c)(1), the ALJ generally gives more weight to "the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." The weight given to a nonexamining source's opinion depends upon the degree to which he provides supporting explanations for the findings. *See* 404.1527(c)(3). As discussed above, the SSA rules provide that state agency medical consultants are considered highly qualified experts in evaluating applications for disability benefits. *See* § 404.1527(e)(2)(i).

The record establishes that Dr. Kelly twice examined plaintiff's medical records in assessing her physical residual functional capacity and reached the same conclusion both times. Tr. 276, 298. A second state medical consultant, P.S. Krishnamurthy, M.D., also reviewed the record and reached the same conclusions as Dr. Kelly. Tr. 306-313. In addition, plaintiff does not specify which records were not yet part of the record or how they would have altered the ALJ's decision. For these reasons, the ALJ properly exercised his discretion in relying on Dr. Kelly's consultative opinions and plaintiff's motion for judgment on this ground is denied.

### 3. Whether the ALJ Gave Proper Consideration to Dr. Coladner's Opinion

Plaintiff saw treating doctor Andrea Coladner, D.O. ("Dr. Coladner") for an initial evaluation on May 28, 2009. Tr. 195. Plaintiff reported that she was a bus driver assistant who had injured her neck for which she was treated with physical therapy and medication. *Id.* Plaintiff complained of neck and low back pain, stiffness, soreness, bilateral arm and hand numbness, left lower extremity pain and difficulty moving with increased pain. *Id.* Benson Go Onghai, M.D.,[5] with whom plaintiff treated after the work-related accident, had prescribed Klonipin and Vicodin and Flexeril twice daily. Tr. 195. After the examination, Dr. Coladner indicated that plaintiff was totally disabled and prescribed physical therapy, Flexeril, Vicodin and a non-steroidal anti-inflammatory patch. Tr. 198. Plaintiff again saw Dr. Coladner on July 9, 2009 and the clinical findings and impressions were unchanged, but plaintiff had not attended physical therapy due to a lack of transportation and a babysitter. Tr. 192-94. On August 14, 2009, Dr. Coladner indicated that plaintiff still had not received any treatment and continued to

---

[5] Tr. 145-157.

be totally disabled. Tr. 189, 191.

Approximately one (1) year later, on August 5, 2010, plaintiff was examined by Dr. Coladner who again indicated that plaintiff was not receiving treatment and was totally disabled; the doctor requested authorization for physical therapy three (3) times per week. Tr. 331, 333. Plaintiff was re-evaluated by Dr. Coladner on September 23, 2010, November 4, 2010, January 5, 2011, April 14, 2011, June 2, 2011, July 14, 2011 and September 14, 2011; treatment notes indicate that her status remained unchanged and she did not receive any treatment. Tr. 334, 336, 337, 339, 340, 342, 343, 345, 346, 348, 350, 352, 353, 355. On December 2, 2011, Dr. Colander completed a medical assessment form indicating that plaintiff could occasionally lift up to twenty (20) pounds, stand and/or walk for thirty (30) minutes continuously and sit for one (1) hour continuously for a total of three (3) hours in an eight (8) hour workday. Tr. 328-29. The form also indicated that plaintiff could occasionally climb, balance, stoop, crouch, but should not crawl or kneel; and that plaintiff's ability to reach and push/pull were affected by her condition. Tr. 329-30.

The treating physician rule "mandates that the medical opinion of a claimant's treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). *See Arzuaga v. Bowen*, 833 F.2d 424, 426 (2d Cir. 1987) (holding that the rule "states that the claimant's treating physician's diagnoses and findings regarding the degree of claimant's impairment are binding on the ALJ unless there is substantial evidence to the contrary"). The rule "governs the weight to be accorded the medical opinion of the physician who treated the claimant . . . relative to other medical evidence before the fact-finder, including opinions of other

physicians." *Schisler v. Heckler*, 787 F.2d 76, 81 (2d Cir. 1986). "The regulations also require the ALJ to set forth her reasons for the weight she assigns to the treating physician's opinion." *Shaw*, 221 F.3d at 134. Plaintiff argues that Dr. Coladner's opinion should have been given significant weight because she consistently treated plaintiff from May 2009 through September 2011.

After considering Dr. Coladner's treatment relationship with plaintiff, the ALJ stated that it was unclear if the recommended treatments were actually administered and noted the gap in treatment from August 2009 to August 2010. Tr. 15. The ALJ also considered Dr. Colander's medical assessment of plaintiff's abilities to sit, walk and stand. As to Dr. Coladner's opinion that plaintiff was totally disabled and unable to return to work, the ALJ found it to be inconsistent "with the clinical signs, diagnostic tests and treatment received." Tr. 16. He also found that the opinion was not supported by an EMG/NCV study, sustained treatment for headaches or other diagnostic tests indicating significant abnormalities. *Id.* In addition, it was unclear whether Dr. Coladner felt that plaintiff could not perform any vocational activity or just her past work as a bus attendant. *Id.* Based upon his finding that the opinion was not supported by the record evidence, the ALJ accorded "limited weight" to Dr. Coladner's opinion.

Insofar as Dr. Coladner's treatment notes indicate that plaintiff is totally disabled, § 404.1527(e)(2)(i) provides that although ALJs must consider findings of "medical specialists as opinion evidence," the "ultimate determination about whether [an individual] is disabled" belongs to the ALJ. *See* 20 C.F.R. § 404.1527(d)(1) (whether a claimant is disabled is a finding reserved for the Commissioner); *Pope v. Barnhart,* 57 F. App'x 897, 899 (2d Cir.2003) (holding that a treating physician's conclusion that a plaintiff is "completely disabled" cannot be given

controlling weight because this issue is reserved for the Commissioner).

Furthermore and despite the treating physician rule, "the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). "The factors that must be considered when the treating physician's opinion is not given controlling weight include: '(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist.' " *Shaw*, 221 F.3d at 134 (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)).

As set forth above, the ALJ's decision considered: the frequency of examination and the relationship between Dr. Coladner and plaintiff; evidence in support of the doctor's opinion; and the opinion's consistency with the record as a whole. Based upon these factors, the ALJ properly exercised his discretion in assigning limited weight to Dr. Coladner's opinion.

Plaintiff also argues that the ALJ committed reversible error by failing to contact Dr. Coladner with regard to alleged deficiencies in the record. With respect to the ALJ's statement that it was unclear which of the treatments prescribed by Dr. Coladner were actually administered, her treatment records establish that plaintiff received no treatment despite Dr. Coladner's directives. Presumably, plaintiff's failure to undergo treatment would not have increased the weight accorded to Dr. Coladner's opinion and therefore, the ALJ's alleged failure to contact the doctor is not reversible error. As to the lack of clarity with regard to Dr. Coladner's opinion regarding plaintiff's vocational ability, the ALJ simultaneously stated that it

was of no moment because the doctor's opinion was not supported by the evidence of record. Tr. 16. Accordingly, plaintiff has not demonstrated that the ALJ failed to assign the proper weight to Dr. Coladner's opinion or committed reversible error.

## III. Conclusion

Based upon the foregoing, plaintiff's motion for judgment on the pleadings pursuant to FRCP 12(c) is **DENIED** and the Commissioner's cross-motion is **GRANTED**. The Commissioner's decision denying plaintiff Social Security Disability benefits is affirmed and the Clerk of the Court is instructed to close this case.

**SO ORDERED**.

Dated: May 15, 2015
       Central Islip, New York

                                                                      /s/
                                          Sandra J. Feuerstein, U.S.D.J.